**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: GROUPON DERIVATIVE LITIGATION | Master Docket No. 12 C 5300<br><br>Judge Joan H. Lefkow |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

Dated:  July 11, 2012

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A.    The Derivative Actions ................................................................... 2

    B.    The Securities Actions .................................................................... 4

ARGUMENT ........................................................................................................... 5

    A.    Standard For Granting A Stay....................................................... 5

    B.    Derivative Actions Are Routinely Permitted to Proceed ............. 6

    C.    A Stay Would Not Simplify The Issues ....................................... 6

    D.    The Derivative Action Is Based On Different Law ...................... 6

    E.    The Derivative Claims Depend On Different Facts ..................... 8

    F.    The Burden on the Parties Will Not Be Lessened By a Stay ...... 11

    G.    Plaintiffs Would Be Materially
         Disadvantaged If This Action Is Stayed....................................... 13

    CONCLUSION................................................................................................ 15

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    <u>**Page**</u>

*Awalt v. Marketti,*
2012 U.S. Dist. LEXIS 49182 (N.D. Ill. Apr. 9, 2012) ............................................13

*Brenner v. Albrecht,*
2012 Del. Ch. LEXIS 20 (Del. Ch. Jan. 27, 2012) ................................... 11, 15

*Brudno v. Wise,*
2003 Del. Ch. LEXIS 35 (Del. Ch. Apr. 1, 2003) ................................... 10, 13

*Cent. Laborers' Pension Fund v. Sirva, Inc.,*
2006 U.S. Dist. LEXIS 73375 (N.D. Ill. Sept. 22, 2006) ................................. 8

*Cucci v. Edwards,*
2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ......................................... 10, 12

*Emerald Partners v. Berlin,*
787 A.2d 85 (Del. 2001)…………………………………………………………...7

*Genzyme Corp. v. Cobrek Pharms., Inc.,*
2011 U.S. Dist. LEXIS 16287 (N.D. Ill. Feb. 17, 2011) ................................. 5

*In re E.F. Hutton Banking Practices Litig.,*
634 F. Supp 265 (S.D.N.Y. 1986) ................................................................ 15

*In re Firstenergy S'holder Deriv. Litig.,*
219 F.R.D. 584 (N.D. Ohio 2004) ................................................................ 14

*In re Massey Energy Co. Deriv. & Class Action Litig.,*
2011 Del. Ch. LEXIS 83 (May 31, 2011) ....................................................... 13

*In re Ormat Techs., Inc. Deriv. Litig.,*
2011 U.S. Dist. LEXIS 96891 (D. Nev. Aug. 29, 2011) ................................. 15

*Kamen v. Kemper Fin. Servs.,*
500 U.S. 90 (1991) ........................................................................................ 7

*Keeling v. Telehub Commc'ns. Corp.,*
2001 U.S. Dist. LEXIS 1542 (N.D. Ill. Feb. 13, 2001) ................................. 8

ii

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................. 5

*Medrad, Inc. v. Sprite Dev., LLC*,
    2010 U.S. Dist. LEXIS 93894 (N.D. Ill. Sept. 8, 2010) ................................ 14

*Mills Acquisition Co. v. MacMillan, Inc.*,
    559 A.2d 1261 (Del. 1989) .......................................................... 7

*Morgan v. Kobrin Secur., Inc.*,
    649 F. Supp. 1023 (N.D. Ill. 1986) ................................................. 5

*Pfizer Inc. v. Apotex Inc.*,
    640 F. Supp. 2d 1006 (N.D. Ill. 2009) ............................................. 12

*Radio Corp. of America v. Igoe*,
    217 F.2d 218 (7th Cir. 1954) ....................................................... 5

*Rosenblum v. Sharer*,
    2008 U.S. Dist. LEXIS 65353 (C.D. Cal. July 28, 2008) .................... 10, 12, 14

*Sonkin v. Barker*,
    670 F. Supp 249 (S.D. Ind. 1987) .......................................... 6, 12, 14

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................................... 7

## STATUTES

15 U.S.C. § 77k ....................................................................... 7

15 U.S.C.S. § 78j(b) ................................................................. 7

Fed. R. Civ. P. 16 .................................................................... 3

## **INTRODUCTION**

Defendants'[1] motion to stay this derivative action should be denied, as it is neither customary nor necessary to stay one action in favor of another that is based on different law and dependent on different facts. There will be no greater efficiency realized by staying the derivative case, which has already progressed further than the securities case and is not subject to statutory discovery stays under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Likewise, the balance of relative prejudice to the derivative plaintiffs ("Derivative Plaintiffs" or "Plaintiffs") and Defendants favors the continued prosecution of the derivative claim. Defendants' desire to tactically dictate the order in which these two separate litigations should proceed – and their claim of "prejudice" should they not get their way – is factually and legally unfounded. Indeed, staying this action pending the resolution of the securities case would seriously prejudice the Derivative Plaintiffs, as delaying consideration of the derivative claim (possibly for years) would cause Groupon to continue operating without the necessary financial and accounting controls sought in this action.

Plaintiffs filed this action derivatively, on behalf of Groupon, Inc. ("Groupon" or the "Company"), in connection with the Company's restatement of its first-ever quarterly financial results as a public company. Plaintiffs allege that Defendants breached their fiduciary duties to the Company and its shareholders by disregarding multiple "red flags" and permitting the Company to function without sufficient controls over its accounting and financial reporting, to its substantial detriment. The theory of the derivative action is materially different from the theory of the securities case, which is based on the issuance of false and misleading statements regarding the Company's

---

[1] Defendants in this derivative action are Eric Lefkofsky, Peter Barris, Kevin Efrusy, Mellody Hobson, Brad Keywell, Ted Leonsis, Andrew Mason, and Howard Schultz (collectively "Defendants").

1

financial results. For the reasons discussed herein, Plaintiffs respectfully request that this Court deny defendants' motion to stay and permit this action to proceed.

## BACKGROUND

Groupon markets discounts on various types of goods and services via email and the web. ¶9.[2] The Company announced its intent to go public in 2011. ¶24. Groupon filed its first Form S-1 Registration Statement on June 2, 2011, and its Initial Public Offering ("IPO") occurred on November 3, 2011. *Id.* Between those two dates, the Company was forced to restate and change multiple IPO-related documents due to improper and misleading accounting metrics and misrepresentations of the Company's financial position. ¶¶25, 26. Groupon's IPO occurred on November 3, 2011, in which it sold 35 million shares at $20 per share. ¶3. On February 8, 2012 -- approximately five months after completing its IPO – Groupon announced its first set of financial results as a public company. ¶32.

Less than two months later – on March 30, 2012 – however, Groupon was forced to *again* restate its financial results and admit that it had identified "material weaknesses" in its accounting controls. ¶34. Its latest restatement – of its first post-IPO financials – revealed that Groupon was far less profitable than had initially been represented. ¶¶34, 36. In response to the restatement, the Securities and Exchange Commission ("SEC") initiated a probe and, beginning on April 3, 2012, multiple lawsuits were filed. ¶¶38-40.

## A.    The Derivative Actions

Plaintiff Monturano filed the first derivative action on April 5, 2012, *Monturano v. Lefkofsky,*

---

[2] Citations beginning with "¶_" reference Theresa Monturano's derivative complaint in *Monturano v. Lefkofsky et al.*, Case No. 12-cv-2507 (N.D. Ill.), filed April 5, 2012.

*et al.*, Case No. 12-cv-02507. A second derivative action was filed on April 12, 2012, *Wong v. Mason et al.*, 12-cv-02682. Four additional derivative suits were filed between April 30, 2012 and May 16, 2012. The derivative actions allege that Defendants permitted Groupon to function with deficient accounting controls and as a result, the Company has been gravely harmed. Compounding these breaches of fiduciary duties, Defendants failed to disclose the accounting issues with due candor. Defendants, all of whom were Groupon Board members during the pre-IPO restatements and accounting problems and remained on the Board during the occurrence of the wrongful conduct alleged – were on notice that Groupon was susceptible to accounting problems, that accounting controls had been deficient in the recent past, and that the Company would be seriously harmed by deficient controls if not corrected.[3]

On April 30, 2012, following relatedness motion practice, this Court entered a scheduling order, requiring Plaintiffs to file their Consolidated Amended Derivative Complaint no more than 45 days after the Court's appointment of Plaintiffs' case leadership, and that Defendants' deadline to answer or otherwise plead thereto would occur 45 days thereafter (Dkt. No. 23).[4] Following subsequent motion practice (Dkt. Nos. 25, 26) and the Court's May 29, 2012 consolidation of the constituent actions and co-lead counsel appointment (Dkt. No. 49), the Court-ordered 45 day clock on the Consolidated Complaint began ticking. On June 6, 2012, the Court held a Fed. R. Civ. P. 16 conference, wherein, Defendants, notwithstanding the Court's prior scheduling order and further notwithstanding the material differences between the derivative and securities litigations, advised the

---

[3] Indeed, Groupon's stock price has been punished by the market as news of the Company's accounting woes came to light. Groupon's initial public offering was priced at $20.00 per share. In just eight months since the November 2011 IPO, the Company's stock price lost well over half its value and is currently trading at $8.31 per share (as of July 10, 2012), a loss of approximately $7.3 billion of its initial market capitalization.

3

Court that they intended to move for a stay of the derivative action pending resolution of a dismissal motion in the securities case. Defendants took this position regardless of the facts that: (a) leadership has not been appointed in the securities case; (b) the securities case is pending before another judge in the District; (c) the theories of the derivative and securities cases are materially different; and (d) the PSLRA's automatic stay provisions do not apply here.

## B.    The Securities Actions

The first two securities class actions were filed on April 3, 2012: *Roselli v. Groupon, Inc.*, Case No. 12-cv-02460, and *Zhang v. Groupon, Inc.*, Case No. 12-cv-02450. Thereafter, three additional securities class action complaints were filed. All of the securities actions have been assigned to Judge Norgle. The securities action has proceeded more slowly than the consolidated derivative case. On June 4, 2012, eight groups of plaintiffs moved to consolidate the securities class actions and be appointed lead plaintiff. On June 8, 2012, Judge Norgle consolidated the securities actions and set a status hearing on the consolidated cases for August 24, 2012. To date, lead plaintiff and lead counsel have not been appointed in the securities actions. In contrast, in the derivative action, Plaintiffs' Consolidated Complaint already will have been filed by the time any forward progress occurs in the securities action. Indeed, resolution of pleading motions and material progress in discovery in the derivative action will be made months, if not years, before any commensurate progress has been made in the securities action before Judge Norgle.

On June 20, 2012, Defendants – far surpassing their initial representation to the Court – moved to stay the Consolidated Complaint pending *the complete resolution of the securities litigation* pending before Judge Norgle. *See* Mem. in Support of Motion to Stay (Dkt. No. 52) at 14

---

[4] Citations to "Dkt. No. __" reference the docket in *Monturano v. Lefkofsky et al.*

("the Court should enter an order staying all further proceedings in the Federal Derivative Action until judgment is entered in the Federal Class Action."). A status conference for the derivative action is presently scheduled before this Court on August 2, 2012.

## ARGUMENT

### A.     Standard For Granting A Stay

It is undisputed that the authority to stay one case in favor of another is inherent within a court's discretionary power to control its own docket and prevent prejudice. *Morgan v. Kobrin Sec., Inc.*, 649 F. Supp. 1023, 1032 (N.D. Ill. 1986) (citations omitted). "An important distinction exists between the power of a court to stay proceedings pending before it and the propriety of using that power, which calls for a weighing of competing interests and the maintenance of an even balance." *Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954).

In deciding a stay motion, courts generally consider whether a stay will:  (1) cause undue prejudice or tactically disadvantage the non-moving party; (2) simplify the issues in question and streamline the ultimate trial of the action; and (3) reduce the burden of litigation on the parties and the court. *See, e.g., Genzyme Corp. v. Cobrek Pharms., Inc.*, 2011 U.S. Dist. LEXIS 16287, at *1 (N.D. Ill. Feb. 17, 2011) (internal citation omitted). This standard requires "that the applicant for a stay clearly show hardship or inequity in being required to go forward. *Thus, a stay should be granted only under exceptional circumstances.*" *Morgan*, 649 F. Supp. at 1032 (denying the motion to stay "[i]n light of the almost certain prejudice to the plaintiffs occasioned by any delay in their suit") (emphasis added); *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendants have not established any exceptional circumstances to warrant a stay of this case.

**B.      Derivative Actions Are Routinely Permitted to Proceed**

Defendants' contentions notwithstanding, courts routinely permit derivative actions and related securities actions to proceed simultaneously when doing so will not run contrary to the interest of economy for the court, counsel, or the litigants. *See Sonkin v. Barker*, 670 F. Supp 249, 253 (S.D. Ind. 1987).[5]

**C.      A Stay Would Not Simplify The Issues**

Contrary to Defendants' argument, the derivative action and the securities action are materially different from one another.   The derivative action and the securities action allege violations of different laws and focus on different operative facts.   Additionally, the derivative action is not subject to the heightened pleading standard required of securities actions under the PSLRA. Moreover, unlike the securities action, where the remedies sought are limited to damages for past harm, the derivative action seeks relief for both past and ongoing harms, as well as equitable relief to prevent the alleged abuses from persisting on an ongoing basis.   Finally, the outcome of the derivative action is not contingent on the outcome of the securities class action.   As a result, a stay of the derivative action in favor of the class action will not simplify the issues in either case.

**D.      The Derivative Action Is Based On Different Law**

Although Defendants contend that the securities and derivative actions bring related claims,

---

[5] Other examples of derivative and securities actions proceeding simultaneously include the following: (i) *In re Apple Inc. Sec. Litig.*, No. C-06-5208-JF (N.D. Cal.) and *In re Apple Inc. Derivative Litig.*, No. 5:06-cv-04128-JF (N.D. Cal.);   (ii) *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-01691-JMR-FLN (D. Minn.); *Cal. Pub. Emps. Ret. Sys. v. UnitedHealth Grp., Inc.*, No. 0:06-cv-02939-JMR-FLN (D. Minn.); and *In re UnitedHealth Group Inc. Derivative Litig.*, No. 0:06-cv-01216-JMR-FLN (D. Minn.); (iii) *Teamsters Local 617 Pension and Welfare Fund v. Apollo Grp., Inc.*, No. CV 2:06-cv-02674-RCB (D. Ariz.) and *Alaska Elec. Pension Fund v. Sperling*, No. CV 06-2124-PHX-ROS (D. Ariz.); and (iv) *City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. 4:07-cv-05111-CW (N.D. Cal.) and *Wilder v. Doris*, No. C-07-1500-CW (N.D. Cal.).

in summarizing the claims in both actions Defendants are unable to cite a single instance of where the claims in the two actions overlap. Defs. Mem. at 5. Because Groupon is incorporated in Delaware, the derivative action's breach of fiduciary duty claims are governed by Delaware law. *See e.g., Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991). Directors of a Delaware corporation "owe fiduciary duties of care and loyalty to the corporation and its shareholders." *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989). Plaintiffs in the derivative action have alleged that Groupon's Board members have breached their fiduciary duties. The duty of care is breached when a director acts with gross negligence. *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006). "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone*, 911 A.2d at 370. These duties do not operate intermittently, but apply at all times. *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001). In order to succeed on these claims, the derivative plaintiffs need to establish that Groupon's directors intentionally or recklessly breached or disregarded their duties to exercise reasonable and prudent supervision over Groupon's management, policies, practices and controls.

In contrast, the claims in the securities action are governed by §§ 11 and 15 of the 1933 Act, 15 U.S.C. § 77k, and §§ 10(b) and 20(a) of the 1934 Act, 15 U.S.C.S. § 78j(b). The Section 11 claim seeks to hold defendants liable for damages sustained by purchasers of Groupon's stock pursuant to the registration statement filed in connection with the Company's IPO. Zhang Cmplt ¶ 76-86.[6] To prevail on this claim, the securities plaintiffs will seek to prove that the registration

---

[6] Citations to "Zhang Cmplt ¶__" refers to the complaint in *Zhang v. Groupon et al.*, Case No. 12-cv-2450 (N.D. Ill.) filed April 3, 2012.

statement contained "an untrue statement of material fact or omitted to state a material fact required to be stated." *Cent. Laborers' Pension Fund v. Sirva, Inc.*, 2006 U.S. Dist. LEXIS 73375, at *9 (N.D. Ill. Sept. 22, 2006). Likewise, the section 10(b) claims seek to hold the securities defendants liable for "false statements that they knew or deliberately disregarded were misleading in that they failed to disclose material facts." Zhang Cmplt ¶ 92. In order to prevail on their 10(b) claims, the securities plaintiffs will be required to prove: "1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) in connection with the purchase or sale of securities; (5) upon which plaintiffs relied; and (6) that reliance proximately caused the plaintiffs' injuries." *Keeling v. Telehub Commc'n. Corp.*, 2001 U.S. Dist. LEXIS 1542, at *7 (N.D. Ill. Feb. 13, 2001).

The recovery sought in each of the two actions is also materially different. The derivative action is brought for the benefit of the Company. Any eventual recovery in the derivative action will be either: (i) equitable relief reforming the Company's corporate governance; and/or (ii) financial damages owed to the Company by the directors. The securities action, by contrast, seeks monetary relief *from* the Company on behalf of a discrete portion of Groupon's shareholders. The securities plaintiffs are not seeking damages related to an ongoing harm so there is no impetus on the parties in the securities action to proceed quickly. However, the equitable relief sought in the derivative action is necessary to prevent ongoing harm to the Company resulting from its continuing operation with deficient controls and in the absence of adequate corporate governance procedures. Plaintiffs in the derivative action are highly motivated to litigate this case expeditiously and are prepared to do so.

### E.    The Derivative Claims Depend On Different Facts

Because the two actions are governed by different laws, the facts on which each of the

8

litigations ultimately turn differ as well. While Defendants make much of the fact that the securities complaints and the derivative complaints both allege the existence of certain uncontested, objectively verifiable facts, just because the complaints in both actions describe similar temporal events does not mean that the focus of both actions is the same. For example, both actions name Groupon's Board members as defendants, but the securities action also names certain Groupon officers and *fourteen* underwriter defendants – none of whom are named in the derivative action. The portion of the litigation relating to the underwriter defendants will be irrelevant to the derivative claims and will force inefficiency and delay upon the Derivative Plaintiffs if they are forced to wait while the underwriters claim gets sorted out in the securities action.

Defendants also point out that both the derivative and securities complaints allege that Groupon issued a press release on February 8, 2012, and that both complaints discuss some of the same public filings, press releases, and news articles. Defs. Mem. at 4. The fact that the alleged wrongdoing in each of the actions occurred during the same time period is undisputed, but, the different operative facts and laws and proposed remedies in each of these actions does not support Defendants' contention that the operative facts of the actions are thus the same.[7]

In reality, the operative facts in the derivative action and the securities action are demonstrably dissimilar. The derivative action is about the actions taken or not taken by Groupon's Board with respect to their supervision of the management, policies practices and controls of the Company. Discovery in the derivative action will focus on whether Groupon's Board members were grossly negligent or reckless, and whether those defendants placed their own financial interests

---

[7] Indeed, by Defendants' logic, flooding cases and drowning cases would be regarded as identical because they both involve water.

9

before Groupon's interests. Operative facts will include whether Groupon's Board was on notice that (i) the Company was susceptible to accounting problems, (ii) accounting controls had been an ongoing problem for Groupon and (iii) the Company would be seriously harmed by a lack of sufficient controls over accounting. It is for this reason, among others, that the derivative complaints discuss Groupon's pre-IPO restatements and registration statement amendments while the Securities Actions do not. *See e.g.* Monturano Cmplt ¶¶ 24-25, 26, 56; *cf.* Zhang Cmplt.

The operative facts in the securities action will include whether false statements were made, and whether the officers, directors, or underwriters who made the statements acted with *scienter*. By contrast, the derivative action is not concerned with the intent or scienter of the person committing an alleged fraud. Because of the importance of scienter to the securities action, it is likely to be a prolonged source of motion practice that will needlessly delay the derivative action if the stay were granted. Even if the Groupon securities action is dismissed after lengthy motion practice on the scienter issue, this will not have a direct impact on the derivative claim which does not require a scienter showing.

The cases Defendants rely upon are not persuasive. For example, in *Rosenblum v. Sharer*, the Court found, among other things, that the derivative claims necessarily depended on the outcome of the securities action. If the defendant was exonerated in the securities action, it was unclear what would be left of the derivative action. As a result the Court stayed the derivative case. 2008 U.S. Dist. LEXIS 65353, at *24-25 (C.D. Cal. July 28, 2008). *Cucci v. Edwards*, is factually inapposite because the plaintiff in *Cucci* did not oppose defendants' motion to stay. *See* 2007 U.S. Dist LEXIS 86832, at * 6 (C.D. Cal. Oct. 31, 2007). *Brudno v. Wise,* 2003 Del. Ch. LEXIS 35 (Del. Ch. Apr. 1,

2003) is also unpersuasive. In *Brudno*, the court concluded that the derivative action was merely a placeholder indemnity action filed on the company's behalf against the director defendants. Finally, *in Brenner v. Albrecht*, the Court found that based on unique facts, the derivative case could not be adjudicated in full until the outcome of the securities action was known. 2012 Del. Ch. LEXIS 20, at * 21 (Del. Ch. Jan. 20, 2012). That is not the situation here.

**F.      The Burden on the Parties Will Not Be Lessened By a Stay**

Because the derivative action and securities action focus on different facts and are based on different laws, no judicial economy will be gained by granting Defendants' demanded stay. Defendants' argument on the subject is based on a false assumption: that the derivative action is contingent on the securities litigation. This is not the case. Even if Judge Norgle ultimately dismisses the securities action, the derivative claim will nonetheless stand because Groupon already admitted that it had deficient financial controls by making the financial restatement and otherwise admitting material weakness in its internal financial controls.

The court in *Sonkin*, addressed this very issue. In *Sonkin*, defendants argued that the claims raised by the derivative plaintiffs were largely just an action for indemnification on behalf the nominal defendant, PSI, resulting from any losses PSI may suffer in related lawsuits, including a securities fraud class action. The Court rejected defendants' argument and found that the derivative plaintiffs alleged damages to PSI beyond those attributable to the other proceedings that had not yet concluded. The plaintiffs alleged damages for PSI's expenditures for legal and other professional fees, its loss of present and future business opportunities, its increased interest expense, its difficulty in obtaining credit and raising funds via issuance of public securities, and the harm to its business

11

reputation and standing in the community. The Court found that resolution of the securities action and other related litigation in favor of PSI would limit the damages recoverable in the derivative action; "it would not eliminate, however, the plaintiffs' cause of action as a matter of law, and such a possibility does not justify a stay at this stage of the proceedings." 670 F. Supp. at 253-254.

Similar to the plaintiffs in *Sonkin*, the Derivative Plaintiffs here allege that as a result of Defendants' fiduciary duty breaches, the Company has incurred a substantial loss of market capital, the Company's business, goodwill, and reputation with its business partners, regulators and shareholders have been gravely impaired and the Company's ability to raise equity capital or debt on favorable terms has been impaired. ¶40-42. The resolution of the securities class action will not address any of these harms. Accordingly, the outcome of the derivative action is not contingent on the resolution of the securities action.

The cases upon which Defendants rely in support of this argument are inapposite. For example, in *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009), plaintiffs first filed a patent infringement suit against defendants in federal district court in Delaware. Anticipating that defendants would challenge personal jurisdiction in Delaware, the *Pfizer* plaintiffs also filed an identical suit in the Northern District of Illinois hours later to protect themselves in the event that a statutory 45 day filing period expired and personal jurisdiction was later found to be lacking. Because the stay sought by the *Pfizer* plaintiffs was pending the outcome of a jurisdictional dispute in an identical case, the facts of that case are not comparable to this case. Likewise, *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007), concerned an *unopposed* motion to stay; *Rosenblum*, *supra*, involved an earlier-filed derivative action had already been *voluntarily*

12

stayed; *In re Massey Energy Co. Deriv. & Class Action Litig.*, 2011 Del. Ch. LEXIS 83 (Del. Ch. May 31, 2011) concerned a motion for a preliminary injunction not a motion to stay; and in *Brudno*, *supra*, a plaintiff filed a derivative case against El Paso in Delaware Chancery Court *after* a similar derivative action was filed in federal court in the Southern District of Texas. The previously filed federal derivative action was already consolidated with the federal securities action and stayed.

**G.    Plaintiffs Would Be Materially Disadvantaged If This Action Is Stayed**

If a stay is granted in the derivative action, the Company and its shareholders will be harmed by the lengthy delay while the securities case is litigated before Judge Norgle. Because the securities litigation is subject to a PSLRA discovery stay until pleading motions are fully resolved, it is guaranteed that Derivative Plaintiffs' case will be unnecessarily delayed, since leadership has not even been appointed in the securities action, and the filing of an amended complaint and dispositive motion practice relating thereto is months, if not more than a year away. Further, prejudice to the Company will result because the Company will continue to function with deficient controls and without the full confidence of the financial markets.[8] Further, grant of a stay is contrary to the well-recognized doctrine that the "plaintiff is the master of her complaint," and is empowered to decide what law she will rely on in bringing suit. *Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 49182, at *34 (N.D. Ill. Apr. 9, 2012).

Defendants argue that litigating this case before the securities action would unduly prejudice

---

[8] *E.g.*, Groupon's stock has continued to fall from $20.00 per share at the IPO to the current price of approximately $8.31, Company leaders have substantially cashed-out, and a recent article in *Crain's Chicago Business* has reported that defendant Lefkofsky will be focusing on other ventures. *See* www.chicagobusiness.com/article/20120702/NEWS08/120709975.

13

the Company's efforts in defending the securities litigation.[9] Defendants' theory presupposes, however, that the cases are the same and speculates about the nature and types of harm that Defendants worry could potentially befall them. Speculative harm, however, is not a reason to grant the requested stay, however. In fact, the court in *Sonkin* rejected many of the same "prejudice" arguments Defendants make here. In *Sonkin*, defendants moved to stay a derivative action arguing that the derivative claims directly conflicted with the company's efforts in defending a pending securities class action. The *Sonkin* court rejected defendants' contention and refused to grant their motion to dismiss or stay the derivative action, finding that defendants' assertion that the company and its shareholders would benefit more from a favorable outcome in the securities action as opposed to the derivative action to be wholly without basis. *See* 670 F. Supp at 251, 254.

Other federal district courts nationwide have similarly concluded that, at this stage in the litigation, arguments materially identical to Groupon's defense of the securities action "prejudice" argument are speculative, at best. *See, e.g., In re Firstenergy S'holder Deriv. Litig.*, 219 F.R.D. 584, 585 (N.D. Ohio 2004); *accord Sonkin*, 670 F. Supp. at 254 (the assumption that the derivative claims would be resolved in the securities action lacks basis). Denying a stay motion is especially warranted where, as here, the case to be stayed is procedurally more advanced than the case it is to be stayed in favor of. *See Medrad, Inc. v. Sprite Dev., LLC*, 2010 U.S. Dist. LEXIS 93894, 14-16 (N.D. Ill. Sept. 8, 2010) (Lefkow, J.) (declining to grant a stay in part because the related Minnesota litigation was "no further along than this case").

---

[9] To the extent that defendants are concerned about a hypothetical risk of duplicative discovery, that concern is best handled by making appropriate orders in the second case relating thereto. If the derivative litigation proceeds without a stay, when the securities action later reaches discovery, Judge Norgle will be able to resolve any duplicative discovery issues on the basis of ascertainable facts in the record and not a hypothetical duplicity.

The cases Defendants cite for this point are inapposite. For example, in *Brenner v. Albrecht*, 2012 Del. Ch. LEXIS 20 (Del. Ch. Jan. 27, 2012), the Delaware Chancery Court stayed a derivative action filed nearly eighteen months *after* the federal securities action and was largely contingent on the outcome of the securities action. Likewise, in *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *25, the Court stayed the derivative action after finding that if the Company was exonerated in the class action, it was unclear that anything would be left of the derivative action. As discussed above, this derivative action is not contingent on the outcome of the securities action. *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp 265 (S.D.N.Y. 1986) does not concern a motion to stay. *In re Ormat Techs., Inc. Deriv. Litig.*, 2011 U.S. Dist. LEXIS 96891 (D. Nev. Aug. 29, 2011) concerned a federal derivative action that was filed after a federal securities class action and a state derivative action, was the last of the three to file a consolidated complaint, and at the time of the decision was approximately three months behind the securities case.

This derivative action is of equal, if not more importance, than the securities action because it will provide relief for the entire Company. Additionally, as stated previously, the Company is exposed to ongoing harm, which a stay would only exacerbate. If the Company is to be found liable in the securities action, it will be in a better position to pay damages if it has been compensated and reformed by the derivative case.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Stay.

15

Dated:  July 11, 2012

Respectfully submitted,

By:  /s/ Marvin A. Miller
Marvin A. Miller
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, Illinois  60603
Tel:  (312) 332-3400

*Plaintiffs' Liaison Counsel*

Adam J. Levitt
Edmund S. Aronowitz
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel:  (312) 984-0000
Fax: (312) 984-0001

Fred Taylor Isquith
Stacey Kelly Breen
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York  10016
Tel:  (212) 545-4600
Fax: (212) 545-4653

Robert I. Harwood
Matthew M. Houston
Benjamin I. Sachs-Michaels
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, New York  10022
Tel:  (212) 935-7400
Fax:  (212) 753-3630

*Plaintiffs' Co-Lead Counsel*

16

VINCENT L. DITOMMASO
PETER S. LUBIN
DITOMMASO LUBIN P.C.
17 W. 220 22nd Street – Suite 410
Oakbrook Terrace, Illinois 60181
(630) 333-0000

NICHOLAS I. PORRITT
LEVI & KORSINSKY, LLP
1101 30th St. NW, Suite 115
Washington, DC 20007
(202) 524-4293

*Attorneys for Rajeev Tipnis*

SETH D. RIGRODSKY
BRIAN D. LONG
GINA M. SERRA
RIGRODSKY & LONG, P.A.
919 North Market Street, Suite 980
Wilmington, Delaware 19801

KONSTANTINE KYROS
GEORGE PRESSLY
KYROS & PRESSLY LLP
60 State Street, Suite 700
Boston, Massachusetts 09102

*Attorneys for Christine Lutz*

FRANCIS A. BOTTINI
KEITH M. COCHRAN
CHAPIN FITZGERALD SULLIVAN &
 BOTTINI LLP
550 West C Street, Suite 2000
San Diego, California 92101
(619) 241-48110

*Attorneys for Chad Martin*

17

KEITH J. KEOGH
CRAIG SHAPIRO
TIMOTHY J. SOSTRIN
KEOGH LAW, LTD.
101 North Wacker Drive, Suite 605
Chicago, Illinois 60606
(312) 726-1092

KENNETH G. GILMAN
GILMAN LAW LLP
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, Florida 34134
(239) 221-8301

*Attorneys for Shawn Potter*