# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: GROUPON DERIVATIVE ) | |
| LITIGATION ) | 12-CV-5300 |
| ) | **Judge Joan H. Lefkow** |
| ) | |

## OPINION AND ORDER

This is a consolidated shareholder derivative action brought on behalf of nominal defendant Groupon, Inc. ("Groupon" or "the company") against certain executive officers and members of its board alleging breach of fiduciary duty and abuse of control.[1] Also pending in this district is a class action brought against Groupon, certain executive directors, board members and underwriters alleging various securities law violations. (*In re Groupon, Inc. Securities Litigation*, Case No. 12-CV-2450). Defendants in the derivative action have moved to stay proceedings pending the resolution of the related securities case. For the reasons set forth herein, their motion (#51) will be granted in part and denied in part.

---

[1] There six consolidated derivative actions include *Monturano* v. *Lefkofsky*, Case No. 12-CV-2507; *Wong* v. *Mason*, Case No. 12-CV-2682; *Potter* v. *Mason*, Case No. 12-CV-3217; *Martin* v. *Mason*, Case No. 12-CV-3412; *Tipnis* v. *Mason*, Case No. 12-CV-3792; and *Lutz* v. *Mason*, Case No. 12-CV-3667. There are also two derivative actions pending in the Cook County Circuit Court, *Orrego* v. *Lefkofsky*, Case No. 12-CH-12420, and *Kim* v. *Lefkofsky*, Case No. 12-CH-19431. Plaintiff and defendant are negotiating a stay of the state actions pending further developments in the federal class action.

## **LEGAL STANDARD**[2]

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *see Tex. Indep. Producers & Royalty Owners Ass'n* v. *EPA*, 410 F.3d 964, 980 (7th Cir. 2004). In deciding whether to grant a stay, courts will "balance the competing interests of the parties and the interest of the judicial system." *Markel Am. Ins. Co.* v. *Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (citing *Landis*, 299 U.S. at 254–55 (The court "must weigh competing interests and maintain an even balance.")). Courts generally consider three factors when determining whether to grant a stay: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *See, e.g., Genzyme Corp.* v. *Cobrek Pharm., Inc.*, No. 10 CV 112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011); *Tap Pharm. Prods., Inc.* v. *Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004). "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see, e.g., Helferich Patent Licensing, LLC* v. *N.Y. Times Co.*, Nos. 10-cv-4387, 11-cv-6914, 11-cv-7189, 11-cv-7395, 11-cv-7607, 11-cv-7647, 2012 WL 1813665, at *1 (N.D. Ill. May 8, 2012);

---

[2] The court possesses subject matter jurisdiction over plaintiff's claims under 28 U.S.C. § 1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial portion of the of the events or omissions giving rise to the claims occurred here.

*Itex, Inc.* v. *Mount Vernon Mills, Inc.*, No. 08 CV 1224, 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010); *Se-Kure Controls, Inc.* v. *Vanguard Prods. Grp., Inc.*, No. 02 C 3767, 2009 WL 5174701, at *1 (N.D. Ill. Dec. 18, 2009); *Pfizer Inc.* v. *Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009).[3] The court has broad discretion in exercising its authority to stay. *Trippe Mfg. Co.* v. *Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

## BACKGROUND[4]

**I.    The Parties**

Plaintiff Theresa Monturano ("plaintiff") brings this suit derivatively on behalf of nominal defendant Groupon. Monturano is, and was at all relevant times, an owner and holder of Groupon common stock.

Nominal defendant Groupon is a corporation founded in 2008 and incorporated under the laws of Delaware with its principal office in Chicago. Groupon serves as a local commerce

---

[3] Defendants argue that the standard for determining whether a stay is appropriate requires "only that the Court 'exercise [its] judgment' by 'weigh[ing] competing interests and maintain[ing] an even balance.'" (Defs.' Reply at 3 (citing *Landis*, 299 U.S. at 254–55; *Market Am. Ins. Co.* v. *Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011); *GE Bus. Fin. Servs. Inc.* v. *Spratt*, No. 08 C 6504, 2009 WL 1064608, at *2 (N.D. Ill. Apr. 20, 2009))). Judges in this district have typically followed the more demanding standard set forth in *Landis*, *i.e.*, whether the movant makes a clear case of hardship or inequity. *See* text, *supra*. Defendants cite *Spratt* for the position that "[w]here two federal courts with concurrent jurisdiction are involved . . . the movant need not demonstrate a compelling need for a stay, . . . it must demonstrate merely that the stay is appropriate." 2009 WL 10646078, at *2. This quotation is taken directly from *Government of the Virgin Islands* v. *Neadle*, 861 F. Supp. 1054, 1056 (M.D. Fla. 1994), which explains that "[t]he party moving for a stay bears the burden of demonstrating that it is appropriate; if a stay would create hardship for a party, however, then the movant must demonstrate that it would suffer hardship or inequity from going forward." *Id.* at 1055 (citing *Landis*, 299 U.S. 254–55). *Dolan* also cites *Landis* but simply omits the "hardship or inequity" standard set forth in that case.

[4] The following facts are taken from the complaints in the first filed derivative action, *Monturano* v. *Lefkofsky*, Case No. 12-CV-2507, and the first filed class action, *Zhang* v. *Groupon, Inc.*, Case No. 12-CV-2450. While this decision was in its final editing stage, plaintiff filed a consolidated complaint. (Case No. 12-CV-5300, Dkt. #7.) The court has reviewed the consolidated complaint. The amended pleading does not affect the outcome of this motion.

marketplace, connecting merchants to consumers by offering goods and services at a discount price via the Internet and email promotions.

The individual defendants are eight current or former executive officers and/or members of Groupon's board of directors. These individuals include: Eric P. Lefkofsky, co-founder and executive chairman; Bradley A. Keywell, co-founder and director since 2008;[5] Andrew D. Mason, founder, chief executive officer, and director since 2008; Peter J. Barris, director since 2008; Kevin J. Efrusy, director since 2009; Mellody Hobson, director before Groupon's initial public offering ("IPO") on November 4, 2011; Theodore J. Leonsis, director since 2009; and Howard Schultz, director since 2011 (collectively "the individual defendants") (collectively with Groupon "defendants").

## II.  The Derivative Action

On April 5, 2012, plaintiff Monturano filed the first of six derivative actions against Groupon and the individual defendants based on events surrounding the company's IPO on November 4, 2011. These cases were subsequently consolidated under the caption *In re Groupon Derivative Litigation*. (*See* order at Case No. 12-CV-2507, Dkt. #45.) Plaintiff alleges that the individual defendants breached their fiduciary duties (Count I) and abused their control (Count II) by permitting Groupon to function with deficient accounting controls thereby harming the company. These deficient controls came to light in the months proceeding and immediately following Groupon's IPO. The company filed its Form S-1 Registration Statement ("registration statement") with the Securities and Exchange Commission ("SEC") on June 2, 2011. Between

---

[5] The complaint alleges that Keywell was a director since 2006, but because the company was not founded until 2008 the court assumes that this is an error.

that date and the date the company went public, it was forced to amend its SEC filings on two separate occasions.

The first amendment occurred on August 10, 2011, after it was discovered that the company's registration statement contained an unconventional non-GAAP accounting metric that permitted Groupon to exclude substantial expenses and allowed it to show a positive operating income metric even though it was not profitable. The second amendment occurred on September 23, 2011, after the SEC forced Groupon to restate its revenue for the first half of 2011 from $1.5 billion to $688 million. Despite these amendments, Groupon went public as scheduled, selling 35 million shares at $20 per share.

Approximately three months later, Groupon released its first set of financial results, reporting a net loss of $42.7 million for the fourth quarter and a $350.8 million net loss for the full year 2011. On March 30, 2012, Groupon issued a press release revising its fourth quarter revenue downward by $14.3 million and, according to *The Financial Times*, admitted that it had identified a material weakness in its internal accounting controls. On this news, Groupon's stock dropped $3.10 to close at $15.28 per share on April 2, 2012. The next day, the *Wall Street Journal* reported that the SEC was examining Groupon's fourth quarter revisions. The first derivative action followed two days later.

### III. The Securities Class Action

On April 3, 2012, the first of five securities class actions[6] was filed by shareholders against Groupon. These cases were subsequently consolidated under the caption *In re Groupon, Inc. Securities Litigation*, and are currently pending in this district before Judge Charles R. Norgle, Sr. ("the class action"). (Case No. 12-CV-2450.)

The class action plaintiffs allege that between November 4, 2011 and March 30, 2012 (the "class period"), Groupon issued materially false and misleading statements regarding the company's business practices and financial results and failed to disclose negative trends in the company's business. (*Zhang* v. *Groupon, Inc.*, Case No. 12-CV-2450, Compl. ¶ 3.) As a result, Groupon stock traded at artificially inflated prices during the class period, and once Groupon's misrepresentations were revealed, its shares dropped 41 percent from their class period high. (*Id.* ¶¶ 3, 9.) The class action plaintiffs seek to recover against Groupon, certain executive officers, board members and/or underwriters for violating (1) § 11 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77k, for filing a false registration statement (Count I); (2) § 15 of the 1933 Act, 15 U.S.C. § 77o, for being culpable participants in the § 11 violation (Count II); (3) § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5, for use of manipulative and deceptive devices (Count III); and (4) § 20(a) of the 1934 Act, 15 U.S.C. § 78t, for aiding and abetting the § 10(b) violation (Count IV). All of the individual defendants in the derivative action are also defendants in the class action.

### IV. The Status of the Derivative and Class Actions

---

[6] The five consolidated securities class actions include *Zhang* v. *Groupon, Inc.*, Case No. 12-CV-2450; *Roselli* v. *Groupon, Inc.*, Case No. 12-CV-2460; *Einspahr* v. *Groupon, Inc.*, Case No. 12-CV-2547; *Pedrow* v. *Groupon, Inc.*, Case No. 12-CV-2791; and *Cottrell* v. *Groupon, Inc.*, Case No. 12-CV-3129.

Both the derivative action and the class action are in their early stages, although the derivative action has progressed slightly faster than its class action counterpart. In the class action, lead plaintiffs' counsel has yet to be appointed, although the issue is fully briefed and pending before the court. A status hearing is set in that case for August 24, 2012. (Case No. 12-CV-2450, Dkt. #101.) In the derivative action, the court appointed lead plaintiffs' counsel on May 30, 2012, and held a pretrial scheduling conference pursuant to Federal Rule of Evidence 16 on June 6, 2012. (Case No. 12-CV-2507, Dkt. #45 & #47.) On June 20, 2012, the derivative defendants filed the present motion. (*Id.* Dkt. #51.)

## ANALYSIS

Defendants argue that staying the derivative action is appropriate because it would simplify the issues in question and streamline the trial, would reduce the burden of litigation on the parties and the court, and would not unduly prejudice or tactically disadvantage plaintiff.

**I.  Simplifying the Issues in Question and Streamlining the Trial**

To determine whether staying the derivative action in favor of the class action would simplify the issues in question and streamline the trial, it is helpful to understand the similarities between the two types of lawsuits. As summarized by an article in the Notre Dame Law Review,

> In a securities class action, the plaintiffs are shareholders alleging that a corporation and its individual officers and directors violated the federal securities laws by making false or misleading public statements. The defendants . . . are the corporation and the corporation's current or former officers and directors. The corporation is directly liable for its own false or misleading statements and vicariously liable for the false or misleading statements of its officers and directors. Any recovery in the lawsuit goes to the corporation's shareholders.

Jessica Erickson, *Corporate Misconduct and the Perfect Storm of Shareholder Litigation*, 84 NOTRE DAME L. REV. 75, 80–81 (Nov. 2008) (internal citations omitted). The role of the corporation in a derivative action, however, is reversed.

> In a derivative suit, the corporation is the functional plaintiff – the real party in interest – and the allegations are that the corporation's current or former officers and directors breached their fiduciary duty to the corporation. Any recovery in a derivative suit is returned to the corporation. As a result, shareholders may receive an indirect benefit from a derivative suit because of their share of ownership in the corporation, but they do not receive any direct financial benefit.

*Id.* at 81 (internal citations omitted); *see generally* 7 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §§ 22:1–110 (4th ed. 2002). Defendants argue that staying the derivative action until the class action is complete would simplify the derivative litigation because if the class action claims are dismissed,[7] then the question of whether the individual defendants are liable for Groupon's alleged securities violations is moot. Indeed, central to plaintiff's derivative claims is the allegation that Groupon has been seriously harmed by "potential liability due to currently filed securities class actions," and if the class action is dismissed, then a significant portion of the derivative action falls away.[8] (*Monturano* Compl. ¶ 40(d).)

Courts that have considered the interplay between derivative and securities actions have often found that derivative claims "cannot be adjudicated in full (or even in large measure) until

---

[7] Defendants state that the class action defendants intend to file a motion to dismiss promptly after a lead plaintiff and lead counsel are appointed and a consolidated or amended complaint is filed. (Defs.' Mot. to Stay at 2.)

[8] The alleged remaining harm to Groupon includes (1) costs incurred in responding to the SEC probe; (2) costs incurred in compensation and benefits paid to defendants that breached their duties to the company (although if the class claims are dismissed it may be more difficult for plaintiff to prove a breach); (3) loss of market capital; and (4) loss of goodwill towards the company. (*Monturano* Compl. ¶ 40.)

the [securities class] [a]ction is tried." *Brudno* v. *Wise*, No. Civ. A. 19953, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003); *see also Rosenblum* v. *Sharer*, No. CV 07-6140 PSG (PLAx), 2008 U.S. Dist. LEXIS 65353, at *25 (C.D. Cal. July 28, 2008) (noting that "if [the company] is exonerated in the securities class action, then it is unclear what, if anything, would be left of the derivative action"); *Cucci* v. *Edwards*, No. SACV 07-532 PSG (MLGx), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (recognizing that "[i]f Defendants are successful on the motion to dismiss the Securities Class Action complaint, Plaintiffs may have little basis for pursuing this Shareholder Derivative Action"). In these circumstances, "the sensible ordering of events is for the . . . [securities class] [a]ction to proceed first." *Brudno*, 2003 WL 1874750, at *5.

Plaintiff argues that a stay is not warranted because the derivative action seeks relief for ongoing harm and the class action does not. As such, the parties in the class action have less incentive to proceed quickly. In addition, argues plaintiff, unlike the *Brudno* complaint, which was a "placeholder indemnity action filed on [the company's] behalf," 2003 WL 1874750, at *1, the present complaint seeks more than just indemnification from members of board; it also seeks reforms to improve corporate governance. (*See Monturano* Compl. Prayer for Relief.) Thus, proceeding promptly is of the utmost importance.

A resolution of the class claims would significantly simplify the central issue in the derivative case, *i.e.*, the scope of the individual defendants' liability. At the same time, the derivative action presents issues related to Groupon's loss of market capital and goodwill that are not dependent on the outcome of the class claims. One possible solution is to stay the derivative action until Judge Norgle has had an opportunity to consider the sufficiency of the class action complaint. If the class claims are disposed of on a motion to dismiss, then the scope

9

of the derivative action will be significantly limited. If the class claims are allowed to proceed, then the need to adjudicate the non-dependent derivative claims and implement corporate reforms may persuade this court that simultaneous proceedings are necessary. For the time being, however, the court believes that this factor favors granting a stay. *See Brenner* v. *Albrecht*, No. 6514-VCP, 2012 WL 252286, at *6 (Del. Ch. Jan. 27, 2012) (staying derivative action in favor of class action where the relief sought by the derivative plaintiffs was "only partially contingent on the outcome of the Securities Class Action").

## II.     Reducing the Burden of Litigation on the Parties and the Court

Defendants next argue that the derivative action should be stayed because the parties, issues and allegations substantially overlap with those of the class action and judicial economy favors a stay. Plaintiff counters that the derivative action is based on different law and facts and the burden on the parties will not be lessened by a stay.

As for the similarity of the parties, both sets of plaintiffs are Groupon shareholders and all eight of the individual defendants are named as defendants in the class action. The class action also names fourteen underwriter defendants who are not parties to the derivative action, and plaintiff argues that class proceedings as to these defendants will cause undue delay. This delay can be remedied in part, however, by awarding plaintiff prejudgment interest on her claims. *See Brenner*, 2012 WL 252286, at *7 ("As to delaying any recovery, the relief [plaintiff] seeks in this derivative action is primarily monetary. Therefore, prejudgment interest can redress any harm caused by the delay."). Although the class action contains different plaintiffs and additional defendants, the parties in both cases need not be perfectly aligned for the court to issue a stay. *See In re Ormat Techs., Inc.*, No. 3:10-cv-177-ECR-RAM, 2011 WL 3841089, at

*5 (D. Nev. Aug. 29, 2011) ("We do not believe that the two actions must involve exactly the same parties . . . in order for a stay [*sic*]."); *In re Westell Techs., Inc. Derivative Litig.*, No. CIV. A. 18533, 2001 WL 755134, at *2 (Del. Ch. June 28, 2001) (the parties in the two actions need only be substantially or functionally identical to issue a stay). Here, all of the individual defendants are facing class claims as is the nominal defendant Groupon. These parties are sufficiently similar.

As for the similarity of the facts, both sets of plaintiffs rely on the same documents to support their claims, including Groupon's (1) registration statement and amendments thereto;[9] (2) IPO prospectus, which contained financial representations about the company and a letter by CEO Andrew Mason;[10] (3) November 3, 2011 press release announcing the price of the IPO;[11] (4) February 8, 2012 press release containing the company's fourth quarter and full year 2011 financial results;[12] and (5) March 30, 2012 press release announcing revisions to the company's fourth quarter and full year 2011 financial results.[13] Both complaints also rely on articles published on March 30, 2012 by *The Financial Times*,[14] and *Seeking Alpha*[15] critical of Groupon and its accounting procedures. Finally, both sets of plaintiffs allege that the company reported a

---

[9] *See Monturano* Compl. ¶¶ 24–26; *Zhang* Compl. ¶¶ 46.

[10] *See Monturano* Compl. ¶¶ 27–29; *Zhang* Compl. ¶¶ 48–50.

[11] *See Monturano* Compl. ¶ 30; *Zhang* Compl. ¶ 51.

[12] *See Monturano* Compl. ¶ 32; *Zhang* Compl. ¶ 53.

[13] *See Monturano* Compl. ¶ 34; *Zhang* Compl. ¶ 55.

[14] *See Monturano* Compl. ¶ 36; *Zhang* Compl. ¶ 56.

[15] *See Monturano* Compl. ¶ 37; *Zhang* Compl. ¶ 57.

net forth quarter loss of $42.7 million on February 8, 2011,[16] and that the company's March 30, 2012 earnings revisions reduced fourth quarter revenue by $14.3 million,[17] decreasing Groupon stock by $3.10 per share to close at $15.28 per share on April 2, 2012.[18]

Plaintiff acknowledges that both complaints describe similar temporal events but argues that the operative facts are different in each case. The operative facts in the class action include whether false statements were made, and whether the officers, directors or underwriters who made those statements acted with scienter; whereas the operative facts in the derivative action include whether Groupon was susceptible to accounting problems, whether the company had an ongoing problem with accounting controls and whether Groupon would be seriously harmed by a lack of sufficient controls over accounting.

Despite plaintiff's attempt to distinguish the operative facts, a review of the complaints demonstrates that "both actions rest on the same or closely related transactions, happenings or events, and thus will call for the determination of the same or substantially related questions of fact." *Cucci*, 2007 WL 3396234, at *2; *see also In re Ormat Techs., Inc.*, 2011 WL 3841089, at *5 (staying derivative action in favor of class action where "both lawsuits are based on Defendants' accounting practices and public financial statements in 2008 and 2009"); *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *25 (staying derivative action where plaintiffs "will need to prove the same core factual allegations at issue in the securities class action"). In addition, it is likely that both sets of plaintiffs will rely on similar witnesses as the individual

---

[16] *See Monturano* Compl. ¶ 32; *Zhang* Compl. ¶ 53.

[17] *See Monturano* Compl. ¶ 34; *Zhang* Compl. ¶ 55.

[18] *See Monturano* Compl. ¶ 38; *Zhang* Compl. ¶ 58.

defendants' testimony will be necessary to establish the relevant facts in both cases. *See Breault* v. *Folino*, No. SACV010826 GLTANX, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (staying derivative action where derivative defendants would likely be called as witnesses in the securities class action); *accord In re Ormat Techs., Inc.*, 2011 WL 3841089, at *4. Given the duplicative nature of the facts at issue, staying the present case in favor of the class action would preserve judicial resources and reduce the litigation burden on the parties and the court.

As to the similarity of the allegations in the two actions, plaintiff argues that a stay is not in order because the derivative claims differ from their class counterparts. To succeed on her derivative claims, plaintiff must show that the individual defendants intentionally or recklessly breached their duties to exercise reasonable care and prudent supervision over Groupon's management, policies and controls. The securities plaintiffs, on the other hand, must show that Groupon's registration statement contained an untrue statement of material fact and that the securities defendants are liable for false and misleading statements.

Although the class and derivative actions are based on different legal claims, the underlying issues are similar. Plaintiff must prove that certain alleged misstatements constitute a breach of the individual defendants' fiduciary duties, whereas the class action plaintiffs must prove that these same statements constitute securities fraud. As defendants point out, these alternate theories are merely two sides of the same coin, and courts have regularly stayed one action in favor of the other despite the different nature of the claims. *See, e.g*, *Ormat Techs., Inc.*, 2011 WL 3841089, at *5; *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *25; *Cucci*, 2007 WL 3396234, at *2; *Breault*, 2002 WL 31974381, at *2; *Brenner*, 2012 WL 252286, at *7; *Brudno*, 2003 WL 1874750, at *5; *In re Westell Techs., Inc. Derivative Litig.*, 2001 WL 755134,

at *3. Given the similarity of the parties, issues and facts, this factor on a whole favors granting defendants' motion.[19]

### III. Whether a Stay Would Unduly Prejudice or Tactically Disadvantage Plaintiff

Defendants assert that a stay would not unduly prejudice or tactically disadvantage plaintiff and is necessary to avoid extreme prejudice to the real party in interest, Groupon. Plaintiff argues that if a stay is granted Groupon and its shareholders will be harmed by the lengthy delay while the class claims are litigated. During this time, the company will continue to function with deficient internal controls and without the full confidence of the financial markets. Plaintiff is correct that staying the present action will delay her requested relief. The prejudice inherent in such a delay can be minimized, however, by periodically evaluating the status of the two cases and determining whether a stay is still warranted. Rather than stay the derivative action pending the conclusion of the class action, which could take years, a more reasonable approach is to stay the derivative action until the parties are at issue in the class action case.

Moreover, proceeding with the derivative action while the class action is pending may prejudice Groupon's defense to the securities claims. As recently explained by the Delaware Court of Chancery,

---

[19] Plaintiff cites *Sonkin* v. *Barker*, 670 F. Supp. 249 (S.D. Ind. 1987), to support her position that staying the present case will not lessen the litigation burden on the parties or the court because plaintiff makes allegations that are not encompassed by the class action; namely, whether the company incurred a loss of market capital or goodwill as a result of the individual defendants' actions. In *Sonkin*, the court refused to dismiss or stay a derivative action in part because the derivative complaint "allege[d] damages to [the company] beyond those attributable to [fraud and securities] proceedings yet [to be] concluded." *Id.* at 253. Unlike Groupon, however, the nominal defendant in *Sonkin* had already agreed to write off losses of $2.7 billion before the defendant moved to stay the action. This write-off was part of the damages that the derivative plaintiffs sought to recover and was not contingent on the other proceedings. *Id.* at 252–53. *Sonkin* is distinguishable on its facts.

> it is not practical for two actors—[the derivative plaintiff] and [the Company's] board—to pursue divergent strategies in two simultaneous actions on behalf of the same entity. . . . Prosecution of [the] derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class Action, and vice versa. The Individual Defendants are likely witnesses in both cases, but [the derivative plaintiff] must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts . . . creates a significant risk that prosecution of [the derivative] case will prejudice [the Company].

*Brenner*, 2012 WL 252286, at *5–6. Other courts have similarly recognized this risk and declined to allow the derivative action to proceed. *See Cucci*, 2007 WL 3396234, at *2 ("[P]rosecution of the Shareholder Derivative Action would likely conflict with [the company's] defense of the Securities Class Action, since the shareholder derivative Plaintiffs would need to prove allegations that would seriously undermine [the company's] defense of the class action.").[20] Proceeding with the present action will also "divert [the company's] financial and management resources from the pending litigation[] against it." *Breault*, 2002 WL 31974381, at *2; *accord In re Ormat Techs., Inc.*, 2011 WL 3841089, at *4. Given the significant overlap between the two cases, and the potential prejudice to Groupon should the present action proceed, the court concludes that Groupon would face hardship if forced to go forward at this juncture. "As with any stay ruling," however, "the court should remain flexible and open to revisiting the situation as events develop." *Brudno*, 2003 WL 1874750, at *5. This action is therefore stayed pending a ruling in the class action on a motion to dismiss. Once Judge Norgle determines

---

[20] Plaintiff also cites *In re FirstEnergy Shareholder Derivative Litigation*, 291 F.R.D. 584 (N.D. Ohio Jan. 26, 2004) to support her position that she would be materially disadvantaged by a stay. The issue in that case was whether the court should issue a protective order under Rule 26(c) staying the derivative action "because the plaintiffs in the securities litigation will have access to the derivative discovery and impermissibly use it to amend their complaint or oppose Defendants' motion to dismiss." *Id.* at 587. The court declined to enter a protective order based on such "speculative harm." *Id.* It did not consider whether denying the motion would pose a conflict of interest to the company as a party to both the derivative and class actions.

whether the class complaint has merit, both the court and the parties will be in a better position to understand the scope of defendants' potential liability.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to stay the derivative action pending the resolution of the related securities class action (#51) is granted in part and denied in part. This action is stayed pending the resolution of a motion to dismiss in *In re Groupon, Inc. Securities Litigation*, Case No. 12-CV-2450, and (if the case goes forward) the court has directed the defendants to answer. Thereafter, the court and the parties may reevaluate the need for a stay.

Enter:_____
JOAN HUMPHREY LEFKOW
United States District Judge

Date:   July 31, 2012